CONNOLLY v. MANHATTAN RY. CO. et al.

DE BALAINE v. SAME.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

APPEAL.—STAY DURING PENDENCY.

Under Const. 1895, art. 6, § 9, providing that no unanimous decision of the appellate division of the supreme court that there is evidence supporting the finding of fact or a verdict not directed by the court shall be reviewed by the court of appeals, a stay will not be granted pending an appeal to the court of appeals from a judgment which has been unanimously affirmed by the appellate division.

Appeal from special term, New York county.

Actions by Ellen M. B. Connolly against the Manhattan Railway Company and the Metropolitan Elevated Railway Company, and by Mary A. Durup De Balaine against the same defendants. From an order denying a motion by defendants for a stay in each case pending an appeal to the court of appeals, defendants appeal. Affirmed.

The opinion of Mr. Justice LAWRENCE at special term is as follows:

Motions are made in each of these cases for an order staying the operation of the injunction contained in the judgments therein pending an appeal to the court of appeals, and extending the time of the defendants to make the tenders and payments provided for by said judgments until such time as may be reasonable after the decision of the appeal which the defendants have taken to the court of appeals. The granting of such motions would be a matter of course, in ordinary cases. But in these cases it appears that each of the judgments after modification as to damages, was unanimously affirmed by the appellate division; and, inasmuch as the new constitution (article 6, § 9) provides that no unanimous decision of the appellate division of the supreme court that there is evidence supporting or tending to sustain the finding of fact on a verdict not directed by the court shall be reviewed by the court of appeals, there is no necessity for a stay, because, upon the face of the papers, the appeal must be fruitless. Motions denied, with costs.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, and INGRAHAM, JJ.

J. T. Davies, for appellants.
H. A. Forster, for respondent Connolly.

PER CURIAM. Order affirmed, with $10 costs and disbursements, in each case, on opinion of Mr. Justice LAWRENCE at special term.

---

In re CITY OF ROCHESTER.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

BOUNDARIES—FOLLOWING STREAM.

Where a deed describes the land conveyed as beginning at a certain point, and "running thence east, to the top of the bank of the Genesee river; thence southeasterly, along the top of the bank, to a point that a line parallel with the north line will contain ten acres, * * * containing ten acres, and no more,"—the course "along the top of the bank" follows the meanders of the bank.

Appeal from special term, Monroe county.

Application by the city of Rochester to acquire land for park purposes. From an order confirming the report of the referee to whom the cause was referred to ascertain the rights of claimants to the awards made, William H. Robinson, one of the claimants, appeals. Affirmed.

The opinion of P. M. FRENCH, Esq., the referee, is as follows:

In 1859, five persons, who were the heirs at law of Nathaniel Hall, owned the premises taken by the city for park purposes in this proceeding, including the premises in dispute, as well as other adjoining land. The premises in dispute, the title to which is claimed by William H. Robinson, and also by Mary Martin, are situate between the boulevard leading from Rochester to Charlotte and the top of the high bank on the west side of the Genesee river. In 1864, the said heirs at law of Nathaniel Hall conveyed to Samuel Donnelly a portion of the land owned by them, by the following description: "All that tract or parcel of land situate in the town of Greece, being in township number one, beginning at the northwest corner of lot No. 2; running thence east, to the top of the bank of the Genesee river; thence southeasterly, along the top of the bank, to a point that a line parallel with the north line will contain ten acres; thence westerly, along said line, to the River road, known as 'Lake Avenue'; thence northerly, along the line of said highway, to the place of beginning,—containing ten acres, and no more." By mesne conveyances, the claimant Mary Martin has succeeded to the title so conveyed to Donnelly. The top of the high bank referred to in this description is irregular, and the question to be decided here involves the location of the east line of the premises. If that line follows the course of the top of the high bank of the river in all its irregularities, the disputed land was conveyed to Donnelly, and the claim of Mary Martin is substantiated. If, however, on the contrary, that line is a straight line, as is claimed by the claimant William H. Robinson, such eastern boundary would exclude and cut off the disputed land, which contains about one acre, and projects easterly, to follow the course of the river at that point, and to which the said William H. Robinson claims title through mesne conveyances from the said heirs of Nathaniel Hall, all executed and delivered after the deed to Donnelly. The description in the deed to Donnelly, above quoted, is unambiguous, very plain, and easily understood, and there would seem to be no room for conjecture as to the intent of the grantors, or for construction of the language used so far as the eastern boundary is concerned. Applying the elementary principle that distances, courses, and quantities must yield to natural monuments and objects, the east line of the premises conveyed to Donnelly must be held to be the top of the high bank, following all its irregularities. The course "thence southeasterly" is described and accurately fixed by the words following, "along the top of the bank," which described a natural monument or course marked on the land itself. The exception to this rule concerning natural monuments, referred to in Higinbotham v. Stoddard, 72 N. Y. 99, and similar cases, has no application here, because, if for no other reason, the course of the eastern boundary in the Donnelly deed is not accurately given in the deed; it is simply "southeasterly," which might be any course between due south and due east, were it not for the following language in the same sentence, defining and locating it as "along the top of the high bank."

As I understood the argument of counsel for the claimant William H. Robinson, it is that the south line of the premises conveyed to Donnelly was, at the time of the deed to him, practically located on the ground by actual survey, and then agreed upon as it is now located, and that it is located too far south to include "ten acres, and no more," within the boundary lines. To sustain this argument, two things are necessary: First, the west and north boundary lines must be taken to be the center of the adjacent highways, and not their exterior lines; and, second, to show title to the disputed land in the claimant William H. Robinson, the boundary line to be changed must be the easterly, and not the southerly, line,—that is, the easterly boundary line, instead of following the high bank, must be a straight line extending

from the northern to the southern boundary, and reaching its southern limit at a point distant about one hundred feet westerly from the top of the high bank. Various measurements have been made, and maps prepared and given in evidence, showing that, if that were done, the included land would be 10 acres.

Much evidence has been taken up in the attempt to locate the starting point in the Donnelly deed, which is the northwest corner of lot 2, in the center of Lake avenue and the Handford Landing road, or at the intersection of their exterior lines. The question is not without its difficulties, but the controlling fact which has led me to believe that the northwest corner of lot 2 is not in the center of those highways is that the parties to the Donnelly deed, after causing the 10 acres to be surveyed at the time of the conveyance, located the south line of the premises so far south that it is necessary to exclude the highway in order to include no more than 10 acres, and at the same time have the east line follow the top of the high bank. The description used does not in terms include any portion of the highways, unless the northwest corner of lot 2 is in the center of the highway. Such language is used that, under the authorities, the presumption would be that the highways were intended to be conveyed; but that presumption is rebutted in this case, because it appears that by excluding the highways, and following the top of the high bank for the eastern boundary, and leaving the southern line as located, just 10 acres are included. Mott v. Mott, 68 N. Y. 253; Hussner v. Railroad Co., 96 N. Y. 23. And, second, if any line is to be changed, it must be the southern line. That is the line which is to be so drawn as to include "ten acres, and no more." In no event could the eastern line be diverted from the top of the high bank, because it is located there by the express terms of the deed. The intention of the heirs of Nathaniel Hall to so locate that line, and their belief that they had so done, and that the southeast corner of the land conveyed to Donnelly rested on the high bank, is shown beyond a doubt by the fact that in May, 1865, about five months after their deed to Donnelly, they conveyed to James H. Shanley lands adjoining these on the south, and described the easterly boundary of Shanley's land as extending "northerly, along the top of said [high] bank, to the southeast corner of lands sold by the parties of the first part of Samuel Donnelly; thence west, along said Donnelly's south line, to the River road, known as 'Lake Avenue.'" If Donnelly's southeast corner were about 100 feet westerly from the high bank, of course the description in the Shanley deed would be erroneous. The fact that the top of the high bank of the river at these premises has been changed by means of quarrying carried on there, or for any other cause, can make no difference in the location of the land conveyed. Such fact simply renders proof of location more difficult now than it otherwise would have been. Donnelly and his grantees have always occupied to the high bank, and it must be held that Mary Martin owned the land in dispute, and is entitled to the money representing it, which has been deposited to await the result of this reference.

Another fact which is perhaps not controlling, but is at the same time not without its significance, is that if counsel for the claimant William H. Robinson were right, and the south line must be moved about 40 feet northerly to include with the highways just 10 acres, still the disputed land would not belong to Mr. Robinson, because of the Shanley deed, above referred to, which has for its northerly boundary the southerly boundary in the Donnelly deed; and, further, there is no other party to this proceeding claiming to own this land,

Argued before HARDIN, P. J., and ADAMS, WARD, and GREEN, JJ.

Martin W. Cooke, for appellant.

T. D. Wilkin, for respondent.

PER CURIAM. Order affirmed, with costs and disbursements, on the opinion of the referee.